IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. LAURA LORD, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MEDNAX, INC. d/b/a Pediatrix Medical Group of Georgia, P.C., | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

Plaintiff Dr. Laura Lord files this Complaint for Damages.

## I. NATURE OF COMPLAINT

1.

Plaintiff invokes the jurisdiction of this Court and bring claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), the Equal Pay Act of 1963 ("EPA"), and state law.

## II. ADMINISTRATIVE PROCEDURES

2.

Plaintiff fulfilled all conditions necessary to proceed with her claims under Title VII.  Plaintiff timely filed Charges and Amended Charges with the Equal Employment Opportunity Commission against Defendant which the EEOC investigated.

3.

Plaintiff timely filed this action within 90 days of receipt of her Notice of Right to Sue from the EEOC.

### III.  <u>JURISDICTION AND VENUE</u>

4.

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1332. Plaintiff further asks the Court to exercise supplemental jurisdiction over her related state law claims.

5.

The unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391(b), venue is appropriate in this Court.

### IV.   <u>PARTIES</u>

6.

Plaintiff is a female citizen of the United States of America who resides in Gwinnett County, Georgia and is subject to the jurisdiction of this Court.

7.

Defendant Mednax, Inc. d/b/a Pediatrix Medical Group of Georgia, P.C. ("Mednax" or "Defendant") is a corporation licensed to do business in Georgia with its principal office at 1301 Concord Terrace, Sunrise, FL 33323.  At all times material Defendant has conducted business within this District, including, but not limited to, its provision of services to Dekalb Medical Center in DeKalb County, Georgia and other Georgia hospitals.

8.

Defendant may be served with process by delivering a copy of the summons and Complaint to its Registered Agent, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046-4805.

9.

Defendant is a family of companies which provide health solutions across the United States and is engaged in an industry affecting commerce.  During all times relevant, Defendant employed Plaintiff and fifteen (15) or more employees for the

requisite duration.  Defendant is therefore covered as an "employer" in accordance with 42 U.S.C. § 2000e(b) and under the Equal Pay Act of 1963.

10.

Plaintiff worked for Defendant and DeKalb Medical Center as a Neonatologist 2001 until 2016.  During the relevant time period Plaintiff was one of three female Mednax Neonatologists regularly scheduled to work in DeKalb Medical Center's NICU.

11.

Plaintiff had a contractual employment relationship with Defendant at all relevant times.

12.

Defendant had a contractual relationship with DeKalb Medical Center for services provided to DeKalb Medical's NICU prior to April 2016 and continues to have a contractual relationship with DeKalb Medical Center.

13.

Defendant and DeKalb Medical Center were Plaintiff's joint employers while Plaintiff worked as a Neonatologist at DeKalb Medical Center.

V.   <strong><u>FACTUAL ALLEGATIONS</u></strong>

14.

4

Plaintiff began working at DeKalb Medical Center as a Neonatologist in 1997. Defendant later entered into a contractual employment relationship with Plaintiff starting in 2001 and became Plaintiff's joint employer.

15.

At no time prior to April 15, 2016 did Defendant advise Plaintiff of any performance-related concern regarding Plaintiff's work at DeKalb Medical Center.

16.

At no time prior to April 15, 2016 did Defendant impose any disciplinary action against Plaintiff.

17.

At no time prior to April 15, 2016 did Defendant receive any complaints regarding Plaintiff's work in DeKalb Medical Center's NICU.

18.

Prior to April 2016, Rose McKelvie became DeKalb Medical Center's Executive Director of Women and Infant Services. Ms. McKelvie promptly created a hostile work environment for Plaintiff because of her gender by subjecting her to extreme oversight and interfering in her day-to-day work treating the NICU's critical patients (despite the fact that Ms. McKelvie was not a Neonatologist) and attempting to harass, threaten and intimidate Plaintiff (but not the male Neonatologists) on a

regular basis.  Ms. McKelvie directed nurses who reported to her to harass and intimidate, interfere with, and subject Plaintiff to a hostile work environment, thereby severely impacting the terms and conditions of Plaintiff's' employment. When Plaintiff attempted to confront Ms. McKelvie and other DeKalb Medical Center managers about Ms. McKelvie's discriminatory treatment and harassment, the hostile work environment became even more hostile.  Ms. McKelvie made it clear she was intent on getting rid of Plaintiff and the two other female Neonatologists employed by Defendant and DeKalb Medical Center.

19.

Defendant employed the following Neonatologists at DeKalb Medical Center prior to April 2016:  Plaintiff, Dr. Madeleine del Portillo (female), Dr. Bridget Cobb (female), Dr. Michael Armand (male) and Dr. Phillip Tatum (male). Before April 18, 2016, Plaintiff complained to Dr. Armand (male), who held the title Medical Director, about the hostile work environment that had been created but no action was taken in response.

20.

On and after April 18, 2016, DeKalb Medical Center demanded that Defendant terminate Plaintiff and all of the female Neonatologists – and only the females – from working at DeKalb Medical Center.   On April 18, 2016, DeKalb

Medical Center's then COO Dane Henry (male) told Dr. Armand that DeKalb Medical Center wanted all of the "females" – including Plaintiff – "gone" from the NICU. Mr. Henry told Dr. Armand that he did not "have a problem" with Dr. Armand or Dr. Tatum, the two male Neonatologists, but the females "must go." Mr. Henry further threatened that he would inflict the highest punishment possible for a physician if Plaintiff and the two other female Neonatologists did not cooperate in their own removal from their positions.

21.

When Plaintiff, Dr. del Portillo, and Dr. Cobb learned from Dr. Armand about Mr. Henry's discrimination and threats, they were incredibly fearful of the possible long-term impact Mr. Henry could have on their professional licenses and careers as physicians. In response to Plaintiff's and Drs. del Portillo and Cobb's complaints to Dr. Armand that only the three female Neonatologists were being singled out for termination, Dr. Armand did not deny the discriminatory conduct or indicate Defendant would take any action to investigate it before acting on it.

22.

Defendant knew that DeKalb Medical Center's direction to Defendant to terminate Plaintiff was not based on Plaintiff's performance. Defendant never investigated DeKalb Medical Center's discriminatory directive to terminate

Plaintiff and the other two female Neonatologists but not the two male Neonatologists before acting on it, despite Plaintiff's and the other females' complaints to Defendant.

23.

On April 21, 2016, after learning of DeKalb Medical's discriminatory directive that she and the other females be terminated, Dr. Lord spoke with DeKalb Medical Center's Chief Executive Officer John Shelton and complained that DMC had singled out the female Neonatologists for removal and that they had been subject to harassment. Dr. Lord asked why DeKalb Medical Center was directing Mednax to terminate only the female Neonatologists, and Mr. Shelton claimed that there were "multiple" letters of complaint against them. When Dr. Lord asked Mr. Shelton if DeKalb Medical Center had complaints about her, Mr. Shelton admitted he could not tell her and said she would have to ask Mr. Henry about that. When Dr. Lord advised Mr. Shelton that there was a process in place at DeKalb Medical Center for handling any complaints about physicians, Mr. Shelton responded that he thought Mr. Henry was handling this.

24.

After learning that DeKalb Medical Center wanted her and the other two female Neonatologists "gone," Dr. Lord also contacted Defendant's regional

director and Dr. Armand to complain of discrimination.  Defendant again did not take any remedial action or even initiate any investigation of Plaintiff's complaints.

25.

After Dr. Lord's conversation with Mr. Shelton and complaints to Dr. Armand and Defendant's regional director, Plaintiff understood that Mr. Shelton supported DeKalb Medical Center's discrimination against and harassment of Plaintiffs, that DeKalb Medical Center would take no action to investigate and/or remediate the unlawful conduct, that Defendant would take no action to investigate and/or remediate the unlawful conduct, and that she was at serious risk of damage to her professional career and reputation.  Reasonably believing her career and professional reputation threatened, Dr. Lord accordingly submitted her written resignation to Defendant that same afternoon, referencing her prior complaints to Dr. Armand and Mr. Shelton.  Defendant again failed to investigate Plaintiff's complaints.

26.

Dr. Lord agreed to continue to work through her contractual notice period in order to avoid the contractual financial penalty but was told by Defendant to call in before each shift to see if she was "still" working at DeKalb Medical Center.  Within weeks, on May 13, 2016, DeKalb Medical Center called for Dr. Lord's immediate termination and "removal from DMC's campus," one day after she complained

9

about the hostile work environment to clinical coordinators Lauren Duncan and Michelle Pratt, and within a month of her complaints to Mr. Shelton and Dr. Armand.

27.

Defendant through Dr. Armand told Plaintiff she could not return to work and said Mednax was not going to "push" this when Plaintiff complained and asked whether Dr. Henry could give such a directive under applicable hospital procedures. Defendant knew that DeKalb Medical Center's direction to immediately remove Dr. Lord and ban her physical presence was in violation of DeKalb Medical Center's and Defendant's policies, regulations, and/or bylaws applicable to Plaintiff, and that the direction was given immediately following Plaintiff's multiple complaints.

28.

Without even asking Plaintiff about what had happened or otherwise investigating her complaints, Defendant terminated Plaintiff and its officer Bill Cox notified Plaintiff that Mednax was accepting her resignation "effective immediately."  When Plaintiff told Mr. Cox that no one had investigated the alleged recent incident or her complaints of discrimination, Mr. Cox said "we don't need to know that" and "we don't care."  When Plaintiff met with Mr. Cox and asked why Defendant would treat an employee this way, Mr. Cox said it was her "own fault," and that Plaintiff had "caused trouble for Mednax" with DeKalb Medical Center.

29.

Despite the express contractual requirement that Mednax pay Plaintiff for the remainder of her notice period in the event it accepted her constructive resignation earlier than the end of the notice period, Defendant further refused to pay Plaintiff for the remainder of her contractual notice period.

30.

According to Defendant, after April 21, 2016, one of DeKalb Medical's conditions to continue its contractual services agreement with Mednax was the termination of Plaintiff and the two other female Neonatologists, but DeKalb Medical Center did not require the termination of the two male neonatologists, Dr. Armand and Dr. Tatum.  Defendant made no effort to investigate why Mr. Henry demanded removal of only the females.  DeKalb Medical Center further demanded that Mednax identify new physicians for the hospital to consider to provide medical services in the DeKalb Medical Center's NICU in place of Plaintiff and the other two female Neonatologists.

31.

Defendant hired and DeKalb Medical Center credentialed Dr. Brett Jakaitis (male) for placement as a DeKalb Medical Center NICU Neonatologist after April 2016.  Dr. Jakaitis had less experience as a Neonatologist than Plaintiff.

32.

After Defendant removed Plaintiff and the other two female Neonatologists from DeKalb Medical Center, Defendant made Dr. Tatum the medical director, and Dr. Armand retained a corporate medical director title after August 2016. Both Dr. Tatum and Dr. Armand continue to work at DeKalb Medical Center.

33.

After April 18, 2016 until Plaintiff's last day of work at DeKalb Medical Center, Dr. Lord was a) forced to perform work caring for the NICU's critical infant patients in an openly hostile work environment where DeKalb Medical Center's staff discussed the terminations and replacements, ignored or delayed responses to her and her patient's work-related needs, refused to communicate with her, manufactured complaints about her, and continued to otherwise discriminate and retaliate against Plaintiff; and b) excluded from work-related meetings, staff meetings, emails, and communications while Drs. Armand and Dr. Tatum were not.

34.

Plaintiff was replaced by male Neonatologists.

35.

Despite Plaintiff's multiple complaints of discrimination and harassment, Defendant never took any remedial action.

36.

Defendant's decision to implement DeKalb Medical Center's discriminatory and retaliatory directives regarding Plaintiff was unlawful, severe and pervasive, and altered the terms and conditions of Plaintiff's employment.   Defendant's own discrimination and retaliation against Plaintiff altered the terms and conditions of Plaintiff's employment.

37.

Defendant permitted a hostile work environment that Plaintiff was required to endure as a condition of employment to continue despite her complaints.

38.

Defendant chose not to take reasonable steps to prevent gender discrimination and retaliation from occurring, despite its knowledge of the blatant gender discrimination and retaliation and toxic work environment.

39.

Instead of investigating Plaintiff's complaints, or taking any corrective action, Defendant further retaliated against Plaintiff as outlined above.

40.

Although Defendant may purport to provide a legitimate non-discriminatory and/or non-retaliatory reason for the adverse actions it took against Plaintiff, any such reason is a pretext for intentional discrimination and/or retaliation.

41.

Defendant treated other Neonatologists outside of Plaintiff's protected class differently and more favorably.

42.

Defendant paid Plaintiff less per hour and overall than it paid male Neonatologists despite her performance of substantially equal work.

## CLAIMS FOR RELIEF

## COUNT ONE:  GENDER DISCRIMINATION
## IN VIOLATION OF TITLE VII

43.

Plaintiff realleges the preceding paragraphs.

44.

Defendant's adverse actions, including, but not limited to Plaintiff's termination, adverse terms and conditions of employment, and its failure to pay Plaintiff the same wages as employees of the opposite sex for the performance of substantially equal work, subjected Plaintiff to ongoing gender discrimination and

constitutes unlawful discrimination on basis of Plaintiffs' gender in violation of Title VII.

45.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

46.

As outlined above, the working conditions and threats to Plaintiff's professional reputation became so intolerable as a result of Defendant's gender-based discrimination and harassment that a reasonable person in Plaintiff's position would have felt compelled to resign.    Defendant further discriminated against Plaintiff on the basis of her sex when it terminated her prior to the expiration of her contractual notice period.

47.

The effect of the conduct complained of has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect the terms and conditions of her employment and her status as an employee because of her gender.

48.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being and her professional reputation.

49.

Accordingly, Defendant is liable for the actual, compensatory, and punitive damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT TWO:  RETALIATION IN VIOLATION OF TITLE VII

50.

Plaintiff re-alleges the preceding paragraphs.

51.

Plaintiff's complaints to Defendant about gender discrimination and harassment constitute conduct protected under Title VII.

52.

Defendant's adverse actions, including, but not limited to Plaintiff's termination, against Plaintiff because of Plaintiff's complaints of gender discrimination and harassment constitute unlawful retaliation in violation of Title VII.

53.

As outlined above, the working conditions and threats to Plaintiff's professional reputation became so intolerable as a result of Defendant's retaliation that a reasonable person in Plaintiff's position would have felt compelled to resign. In addition, Defendant's decision to terminate Plaintiff prior to expiration of her contractual notice period was intentional retaliation.

54.

Accordingly, Defendant violated Plaintiff's rights pursuant to the Civil Rights Act of 1991 and is liable for compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1).

55.

As a direct and proximate result of Defendant's actions, Plaintiff has suffered economic and non-pecuniary damages.

56.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward each Plaintiff were undertaken in bad faith.

57.

Defendant is therefore liable for damages proximately resulting from its retaliation against Plaintiff.

## COUNT THREE:  VIOLATION OF THE EQUAL PAY ACT OF 1963

58.

Plaintiff re-alleges the preceding paragraphs.

59.

Defendant employed Plaintiff and male employees in jobs requiring substantially equal skill, effort, and responsibility.  The jobs performed by Plaintiff and male comparators were performed under similar working conditions. Defendant paid Plaintiff a lower hourly rate and lower overall compensation than the male comparators doing substantially equal work.

60.

As a result, pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to recover the amount of underpayment, an additional amount as liquidated damages, and costs and attorneys' fees.

## COUNT FOUR:    BREACH OF EMPLOYMENT CONTRACT

61.

Plaintiff re-alleges the preceding paragraphs.

62.

Plaintiff had a June 1, 2015 contract of employment with Defendant. Defendant breached its contract with Plaintiff by terminating her employment

without cause and in violation of the express terms of the contract and by refusing to pay Plaintiff for the remainder of her contractual notice period in violation of the express terms of the contract.  As a direct and proximate result of Defendant's breach, Plaintiff suffered damages and incurred attorney's fees.

## COUNT FIVE:  ATTORNEYS' FEES AND EXPENSES OF LITIGATION UNDER GEORGIA LAW

63.

Plaintiff re-alleges the preceding paragraphs.

64.

Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense in litigating Defendant's breach of Plaintiff's contract, and Plaintiff is entitled to recover the expenses of litigation related to her state law breach of contract claim, including attorneys' fees, under Georgia law.

## PRAYER FOR RELIEF

Plaintiff seeks judgment as follows:

(a)      General damages including damages for mental and emotional suffering caused by Defendant's misconduct;

(b)        Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)        Special damages for lost wages and benefits and prejudgment interest thereon, and liquidated damages for purposes of Plaintiff's Equal Pay Act claim;

(d)        Reasonable attorney's fees and expenses of litigation;

(e)        Trial by jury as to all issues;

(f)        Prejudgment interest at the rate allowed by law;

(g)        Declaratory relief to the effect that Defendant has violated Plaintiffs' statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant, from further unlawful conduct of the type described herein; and

(i)        All other relief to which each Plaintiff may be entitled.

Respectfully submitted, this 13th day of November, 2017.

_/s/Tracey T. Barbaree_____
Tracey T. Barbaree
GA Bar No. 036792
Beth A. Moeller
GA Bar No. 100158

MOELLER BARBAREE LLP
1100 Peachtree Street N.E.
Suite 200
Atlanta, GA  30309
404.692.5543

*Attorneys for Plaintiff*